DECISION
Mortgage Resource Professionals, Inc. ("MRP,") brings this appeal from a decision of the Department of Labor and Training ("DLT"). DLT found that MRP wrongfully withheld wages lawfully owed to Anne Nobrega ("Nobrega"). For reasons set forth in this Decision, the Court dismisses the appeal as untimely under G.L. 1956 § 42-35-15.
 I Facts and Travel
MRP is a mortgage brokerage firm that employs loan officers. (Tr. at 6, May 12, 2006.) At times material hereto, Nobrega worked for MRP as a loan officer whose work focused on the preliminary stages of loan transactions. As a loan officer, she solicited and assisted borrowers seeking refinancing or new loans. Id. Most of Nobrega's involvement in the transactions ended once she arranged for a borrower to obtain the financing. She would then turn the file to an MRP underwriter for finalizing.[1] MRP does not pay loan officers for their work on a transaction until the loan is closed and funded. (Decision at 4, Nov. 27, 2006.) *Page 2 
MRP paid Nobrega thirty percent of the broker fee and yield spread premium as a commission with respect to all loans that she handled which were ultimately closed and funded.[2]
(Tr. at 10, May 12, 2006.) Nobrega never signed, nor was she presented with, an employment contract embodying those terms.Id.
After an argument with her supervisors at MRP, Nobrega abruptly left the company on April 22, 2003. MRP refused to pay her commissions on any accounts that were not closed and funded by that date. Nobrega contended that she was entitled to receive commissions on loans she had handled and which were ultimately closed and funded, even if the loans were closed and funded after she had departed the company.
On May 21, 2003, Nobrega filed a complaint with DLT, seeking unpaid commissions for work she had performed on loans that were closed and funded after she had left MRP. (Applicant's Ex. 1, DLT Hearing, 06/12/06.) DLT held hearings on May 12, 2006 and August 3, 2006. The hearing officer found that MRP wrongfully withheld wages lawfully owed to Nobrega. He stated that she was entitled to receive thirty percent of the broker origination fee plus thirty percent of the yield spread premium for loans that closed and funded within thirty days of the date she terminated her employment. (Decision at 5, Nov. 27, 2006.) The hearing officer awarded Nobrega unpaid gross wages in the amount of $7,110.70, less any payments she received following the hearing, and imposed a 25% penalty on MRP of $1,777.68. In accordance with the ruling, all payments were "due within thirty days" of the decision."Id.
The hearing officer issued his written decision on November 27, 2006. On that same day, November 27, 2006, DLT mailed a certified copy of the decision to both parties and their *Page 3 
respective attorneys. The decision contained the appeal procedures on the sixth and final page as required by § 42-35-12. It stated in bold type:
 Appeal Procedures If you are aggrieved by this agency decision, you may appeal this final decision to the Rhode Island Superior Court within thirty (30) days from the date of the mailing of this final decision pursuant to the provisions for judicial review established by the Administrative Procedures Act, specifically R.I.G.L. § 42-35-15. (Decision at 6, November 27, 2006.)
Twenty-four or twenty-five days after the decision, MRP President, Lynn Gaulin ("Gaulin") purportedly attempted to contact DLT employee Ann Breton ("Breton") by telephone to inquire about the award calculations. (Tr. at 14, DLT Reconsideration Hearing, 5/31/07.) Breton, however, supposedly was on vacation, and Gaulin claims that DLT advised her to fax over her concerns. For reasons unexplained, Gaulin waited approximately one week before sending the fax to DLT on December 28, 2006.[3]
(Amended Decision at 4, June 13, 2007.) Thereafter, on January 4, 2007, MRP's attorney contacted DLT by telephone and then submitted a written request for a rehearing in a letter received by DLT on January 9, 2007. Id.
In the written request, which was dated a week after the thirty day appeal period had run, MRP sought reconsideration of the decision contending that the original award miscalculated the amount owed to Nobrega and that the hearing officer overlooked pertinent evidence. MRP claimed it was not challenging the "substance of the rulings" of the original decision and that its argument would be limited to evidence and testimony presented at the original hearings. (Tr. at 6, DLT Reconsideration Hearing, 5/31/07.) MRP claimed that the original award contained commissions from loans that were funded outside of the thirty day window. Id. Of significance to the issues before this Court, MRP claimed that the hearing officer overlooked testimony and *Page 4 
exhibits, and MRP suggested that certain credits should have been deducted from the overall commission. Id. at 7; Appellant's Exs. 2 and 3, DLT Hearing, 6/12/06. MRP asked DLT to review the original decision and to adjust the award accordingly. Nobrega objected to the request and challenged the authority of DLT to reopen the matter after the appeal period had passed. (Tr. at 10-11, DLT Reconsideration Hearing, 5/31/07.)
The hearing officer who decided the case had left DLT, and the request for reconsideration was assigned to a second hearing officer. (Tr. at 2, DLT Reconsideration Hearing, 5/31/07.) On May 31, 2007, he conducted a limited hearing to determine two issues: first whether the case should be reopened, and second, whether the evidence supported the November 27, 2006 decision of the previous hearing officer. He did not allow the parties to present any additional evidence.
At the reconsideration hearing of May 31, 2007, counsel for MRP acknowledged that he had failed to focus on issues relating to damages at the original hearing and chose instead to concentrate solely on issues of liability. In essence, MRP made a strategy decision that backfired and sought an opportunity on reargument to articulate issues it chose to ignore when the matter was first heard. MRP explained such failure by stating that "[n]ot knowing how [the original hearing officer] was going to come down on the substantive issue and without trying to prejudice our claim that Ms. Nobrega was entitled to absolutely nothing . . . we did not go through each closing sheet demonstrating what credits were awarded, nor could we anticipate what credits needed to be charged back to the loan for consideration in her commission." (Tr. at 7, DLT Reconsideration Hearing, 5/31/07.) Clearly, such strategy is fraught with danger, and nothing prevented counsel for MRP from arguing in the alternative at the first hearing. Over the objection of Nobrega, the second hearing officer permitted MRP's request to reopen the proceedings. *Page 5 
DLT issued an amended decision on June 13, 2007. In that decision, the second hearing officer stated that "[t]here is no question that this department did not receive a reconsideration request within the thirty (30) day period." (Amended Decision at 4, June 13, 2007.) Noting that he lacked guidance from either DLT rules or the Administrative Procedures Act (hereinafter "APA") as to the time frame for an agency to reopen a decision, the hearing officer referred to the Superior Court Rules of Civil Procedure.[4] He cited to Super. Ct. R. Civ. P. Rule 59 and 60 and seemed to base his decision to allow MRP to reopen the case on Gaulin's failed effort to reach Breton by telephone. He noted that during that telephone call, Gaulin may have been given the impression that she had further time to seek reconsideration. The record is devoid of any factual basis for this conclusion. He alluded to the letter and telephone call received from MRP's attorney after the thirty day appeal period and concluded that "[t]hese time periods are within reason for a request for reconsideration." Id.
Although the hearing officer allowed the rehearing and "reopened" the original decision, he ultimately upheld that decision as constituting a "reasonable conclusion drawn from the evidence presented." Id. at 5. He ruled that the November 27, 2006 decision of the first hearing officer would remain in full force and effect.[5] He informed the parties of his ruling in a so-called amended decision issued on June 13, 2007. DLT mailed a copy of that decision to both parties on that same day. Like the decision of November 27, 2006, the decision of June 13, 2007 also cited the appeal procedures set forth in § 42-35-15. *Page 6 
On July 13, 2007, MRP took its appeal from the adverse rulings of DLT, asserting that this Court has jurisdiction over the appeal pursuant to § 42-35-15.
 II Issue
The Court reaches only one issue in determining this appeal. Nobrega contends that the appeal period began to run on November 27, 2006, not on June 13, 2007. Accordingly, Nobrega argues that the second hearing officer erred when he reopened the case and that his decision of June 13, 2007 did not extend the appeal period which had run months earlier. The Court agrees.
 III Law and Analysis A Agency Authority To Rehear
There is no specific statutory authority authorizing an administrative agency, such as DLT, to rehear final judicial decisions. See In re Denisewich,643 A.2d 1194, 1197 (R.I. 1994) (analyzing administrative agencies' authority to rehear cases although no specific statutory authority exists). Nonetheless, our Supreme Court has recognized that there is a general consensus between courts and scholars that administrative tribunals have the inherent power to reconsider their judicial acts.See Perrotti v. Solomon,657 A.2d 1045, 1048-49 (R.I. 1995) (obligating retirement board to convene to reconsider applicant's pension pursuant to inherent authority); In re Denisewich, 643 A.2d at 1197-98 (citingHal Artz Lincoln-Mercury, Inc. v. Ford Motor Co.,28 Ohio St. 3d 20, 28, 502 N.E.2d 590, 596 (1986) (concluding agencies' power to initially render a decision embodies the power to reconsider that decision)); E.H. Schopler, Annotation, CommentNote: Power of administrative agency to reopen and reconsider finaldecision as affected by lack of specific statutory authority, 73 A.L.R.2d 939 (highlighting cases *Page 7 
analyzing agency authority to reopen). But see Daniel Bress,Note: Administrative Reconsideration, 91 VA. L.REV. 1737, 1773 (2005) (arguing against agencies' inherent authority to reopen decisions although acknowledging federal courts almost unanimously allow it). Although the applicable statutory scheme does not provide specific guidelines for conducting rehearings, it does address the issue in connection with the time for seeking judicial review of an administrative decision. Section 42-35-15 states, in pertinent part, that judicial review of final agency decisions is available, provided the aggrieved party files a complaint in the Superior Court "within thirty (30) days after mailing notice of the final decision of the agency or, if a rehearing is requested, within thirty (30) days after the decision thereon." (Emphasis added.) The phrase "if a rehearing is requested" would have no meaning whatsoever if the Court concluded that the applicable statutory scheme did not contemplate situations where a litigant requests and is granted a rehearing. As our Supreme Court has said: "One of the fundamental canons of statutory construction observed by this Court is that no construction of a statute should be adopted that would demote any significant phrase or clause to mere surplusage."State v. DeMagistris, 714 A.2d 567, 573 (R.I. 1998) (citingState v. Ricci, 533 A.2d 844, 848 (R.I. 1987); State v.Caprio, 477 A.2d 67, 70 (R.I. 1984)).
The statute sets forth the appeal period to this Court in cases where a rehearing has been requested, but it is does not provide a time frame for filing a request for rehearing. A hearing officer may seek guidance from the Rules of Civil Procedure where he or she faces an issue which is not addressed by the act governing administrative procedures. Federal courts recognize that agencies turn to civil procedure rules when seeking clarification of their own similar procedures. See PuertoRico Aqueduct and Sewer Auth. v. U.S. Envtl. Prot. Agency,35 F.3d 600 (1st Cir. 1994) (highlighting federal court cases suggesting agencies look to civil rules of *Page 8 
procedure for guidance in interpreting similar agency rule). Similarly, our Supreme Court has held that those Superior Court Rules of Civil Procedure consistent with the nature of an appellate proceeding apply to agency appeals. Carbone v. PlanningBd. of Appeal of S. Kingston, 702 A.2d 386, 388-89 (R.I. 1997) (noting consistency between agency appeals and civil actions such that some civil procedure rules can apply to both); seegenerally Astors' Beechwood v. People Coal Co.,659 A.2d 1109, 1114 (R.I. 1995) (holding rules of civil procedure are not superceded by rules of arbitration thus certain civil procedure rules may still apply in arbitration setting);Boranian v. Richer, No. 2008-324-A., slip op. at 5 (R.I., filed Nov. 20, 2009) (determining Rule 60(b) does not apply to arbitrator's award because arbitrator's award not final judgment). In Carbone, the Rhode Island Supreme Court acknowledged that while an agency appeal is not a civil action, it is a "civil procedure as contemplated in Rule 1 of the Superior Court Rules of Civil Procedure . . ." Carbone, 702 A.2d at 388.
 B Rules of Civil Procedure
Although certain Superior Court Rules of Civil Procedure may apply to agency appeals, in this case, the second hearing officer erred when he allowed MRP to reopen based upon his review of Rules 59 and 60. Neither of these rules assists MRP in its end run around the appeal period.
Rhode Island Super. Ct. R. Civ. P. 59 provides, in pertinent part:
 59. New trials — Amendment of judgments. — (a) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues for error of law occurring at the trial or for any of the reasons for which new trials have heretofore been granted in the courts of this state. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact, *Page 9 
conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.
 (b) Time for Motion. A motion for a new trial shall be served not later than 10 days after the entry of the judgment. . .
 (e) Motion to Alter or Amend a Judgment. A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment. Super. R. Civ. P. 59.
Rhode Island Super. Ct. R. Civ. P. 60 provides, in pertinent part:
 60. Relief from judgment or order. — (a) Clerical Mistakes. Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.
 (b) Mistake; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b) . . . The motion "shall be made within a reasonable time . . . not more than one year after the judgment, order, or proceeding was entered or taken. Super. R. Civ. P. 60.
Rule 60(b) is practically identical to General Laws 1956 § 9-21-2. This statute, rather than the rule, governs motions to vacate that are not covered by the Superior Court Rules of Civil Procedure. Section 9-21-2(a) provides, in pertinent part: "On motion and upon such terms as are just, a court may relieve a party or his or her legal representative from a final judgment, order, decree, or proceeding entered therein for the following reasons: (1) Mistake, inadvertence, surprise, or excusable neglect." *Page 10 
By his misplaced reliance on Rule 60, the second hearing officer committed an error of law. Although this Court must give deference to agency decisions concerning questions of fact, questions of law are entitled to de novo review. Carmody v. R.I.Conflicts of Interests Commission, 509 A.2d 453,458 (R.I. 1986). Interpretations of the Superior Court Rules of Civil Procedure and the APA are issues of law, and therefore, this Court will review such decision de novo. Henderson v. Newport County Reg'lYMCA., 966 A.2d 1242, 1246 (R.I. 2009).
 I Rule 59
None of the Rules of Civil Procedure provides support for granting MRP's untimely request to reopen. Although MRP articulates its request to reopen as merely an effort to correct a miscalculation, a review of the record reveals that MRP actually seeks reconsideration of the hearing officer's decision. Under Rule 59, a party may challenge a jury verdict on the grounds that the jury misconceived the evidence, the law, the law and the evidence and the weight thereof. Kurczy v. St. Joseph Veterans Ass'n, Inc.,820 A.2d 929, 936 (R.I. 2003) (comparing role of trial justice in motion for new trial under Rule 59 to that of "superjuror" (citingEnglish v. Green, 787 A.2d 1146, 1149 (R.I. 2001))). Here, MRP argues that the hearing officer calculated the amount owed to Nobrega "in a manner awarding Ms. Nobrega more than she was entitled." (Appellant's Pre-Hearing Br. at 1.) In support of its request for rehearing, counsel for MRP stated that the first hearing officer miscalculated the award based, in part on "other information which was submitted, although we have no indication whether or not it was overlooked." (Tr. at 6, DLT Reconsideration Hearing, 5/31/07.) This argument resembles an argument that a party might advance in favor of a Rule 59 motion following an adverse jury verdict. *Page 11 
In cases heard by a judge sitting without a jury, the trial justice may only review its own decision and grant a new trial after finding either a manifest error of law in the decision or that there is newly discovered evidence that is of sufficient importance to order a new trial. Town of Glocester v. Lucy Corp.,422 A.2d 918, 919-20 (R.I. 1980) (citing Colvin v.Goldenberg, 108 R.I. 198, 208, 273 A.2d 663, 669 (1971)). It is clear that MRP did not allege manifest error of law and did not seek to offer new evidence.
MRP acknowledges that it pursued a failed strategy at the first hearing by ignoring the issue of how the commission would be calculated in favor of focusing solely on its position that Nobrega was not entitled to recover any money at all. (Tr. at 7, DLT Reconsideration Hearing, 5/31/07.) Certainly, MRP could have addressed the commission issue without waiving its position that it did not owe Nobrega back pay at all. It is common for an attorney contesting liability and damages to address both aspects of the moving party's claim. Certainly, there is no rule of procedure that gives a party a second chance to argue more effectively.
There is no question that any motion or request under Rule 59 — whether for a new trial or to alter or amend a judgment — must be filed within ten days after entry of the decision. The request for reconsideration in this case was made more than thirty days after the decision was issued. Rule 59 does not specifically provide a vehicle to MRP to modify the original decision after the expiration of ten days.
However, had MRP merely been seeking to have the hearing officer correct a mathematical error, such as was the case inSchool Committee v. North Providence Federation of Teachers,468 A.2d 272 (R.I. 1983), such a request may not have necessarily been bound by the ten day restriction set forth in 59(e). InSchool Committee, the court granted a motion to correct a judgment which was filed long after the ten day time period had passed. However, the facts are *Page 12 
clearly distinguishable from those of the instant matter. InSchool Committee, a trial justice found a school committee in contempt and ordered it to compensate certain union members. Plaintiffs' counsel prepared a form judgment and submitted it to the court for entry. Although the court entered the judgment as presented by counsel, it contained an inaccurate mathematical computation which was not intended by the trial justice and was inconsistent with his verdict. By granting the filed motion to amend well after the ten day limitation period of Rule 59(e) had expired, but treating it as a Rule 60(b) motion, the court corrected the error so that the judgment would conform to the trial justice's decision. Id. at 275. However, though holding that the second trial justice "acted properly in correcting the mathematical error of said previous judgment," the Court also clarified that it did not "address the question of whether the second trail justice was correct in treating the school committee's motion as a Rule 60(b) motion to vacate judgment."[6] Id.
Although MRP articulates its request to reopen as an effort to have the hearing officer correct an error in calculations, it is actually a request to have the hearing officer reconsider the *Page 13 
evidence and modify the award. This is clearly distinguishable from a pure error in mathematical computations. Because MRP was seeking to correct more than a mere mathematical error, any motion on its part under Rule 59 would have to be filed within ten days.
 2 Rule 60
The second hearing officer relied on Rule 60 to permit MRP to proceed with its tardy motion to reopen. Rule 60(a) provides for relief of mechanical or clerical errors. Jackson v. MedicalCoaches, 734 A.2d 502, 507 (R.I. 1989). It is clear that Rule 60(a) would be of no benefit to MRP.
Regardless of how MRP tries to characterize the inclusion of certain loans and commissions in the initial hearing officer's award, they were not included as the result of clerical errors. MRP asserts that the original hearing officer may have overlooked pertinent evidence in making his award. Counsel for MRP contends that the claimed miscalculations may be based on "the days of the calendar as well as based on other information which was submitted, although we have no indication whether or not it was overlooked." (Tr. at 6, DLT Reconsideration Hearing, 5/31/07.)
Rule 60(a) cannot provide for relief of discretionary decisions of a hearing officer where the mistake alleged is not a clerical error but rather an assertion that the hearing officer misconstrued the evidence or misapplied the facts. Compare Jackson v. MedicalCoaches, 734 A.2d at 507 (determining trial justice's error in entering judgment with prejudice instead of without prejudice more than mere clerical error), with DiLuglio v. Providence Auto Body,Inc., 755 A.2d 757, 778 (R.I. 2000) (concluding trial court properly corrected interest judgment when original decision ignored statutorily mandated interest start date), and CardiCorp. v. State, 561 A.2d 384, *Page 14 
387 (R.I. 1989) (correcting purely ministerial act of prejudgment interest award pursuant to statute which did not allow for judicial discretion); see also Scola v. Boat Frances R., Inc.,618 F.2d 147, 152 (1980) (limiting 60(a) to judicial mistakes that do not alter operative significance of the judgment);Providence Gas Co. v. Burke, 475 A.2d 193, 199 (R.I. 1984) (noting rule 60(a) should not be used to reconsider substantive matters).
Even if arguendo, Rule 60(b) or § 9-21-2(a) could be utilized to extend the ten day time limitation under Rule 59 and the thirty day appeal period, the second hearing officer erred in finding that MRP was entitled to relief under that section of the rule.[7]
MRP did not advance an adequate excuse for failing to meet the applicable timelines, nor did the second hearing officer articulate a sufficient basis for applying Rule 60(b). His decision was based on unexplained neglect, at best.
The second hearing officer stated, "[i]nformation was volunteered from the agency representative, which may have led the respondent to believe that an additional week was available in which an appeal or a reconsideration may have been requested." (Amended Decision at 4, June 13, 2007.) The record does not support this conclusion. MRP does not contend nor did the second hearing officer find that DLT made any statements during the telephone conversation with Gaulin while Breton was on vacation that would have lulled her into a reasonable belief that the timelines would be extended.[8] See generally McAdam v. Grzelczyk, *Page 15 911 A.2d 255, 259-60 (R.I. 2006) (holding insurance company not equitably estopped from raising statute of limitations defense when company did not deceive plaintiff into believing settlement would occur); Gagner v. Strekouras, 423 A.2d 1168, 1169 (R.I. 1980) (recognizing estoppel may prevent statute of limitations defense when insurance company calculated to lull the claimant into a reasonable belief that claim would be settled without lawsuit);Greater Providence Trust Co. v. Nationwide Mutual Fire InsuranceCo., 116 R.I. 268, 272, 355 A.2d 718, 720 (1976) (deciding estoppel not appropriate unless prior to expiration of limitations period plaintiff shows reliance on intentionally misleading conduct of insurer).
It is well-settled that unexplained neglect does not "excuse noncompliance with orderly procedural requirements." Astors'Beechwood v. People Coal Co., 659 A.2d 1109, 1115 (R.I. 1995). A court should interpret excusable neglect flexibly, after considering all relevant circumstances for a party's omission. PleasantMgmt., LLC v. Carrasco, 960 A.2d 216, 224-25 (R.I. 2008) (citingPioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,507 U.S. 380, 389, 395 (1993)). These circumstances include "the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Id. (quoting Pioneer Inv. Servs. Co.,507 U.S. at 395).
Certainly, an inquiry made by Gaulin when DLT employee Breton was on vacation does not excuse MRP's neglect of not filing a timely request for reconsideration or rehearing. MRP made the telephone call long after the ten day period set forth in Rule 59 had expired and made the formal request to reopen after the thirty day appeal period had run. Further, even if Breton *Page 16 
was vacationing when Gaulin first contacted DLT to question the decision, it does not follow that knowledge of Breton's vacation would have provided Gaulin with a reasonable basis to conclude that her absence would serve to stay the timelines for filing a request to reconsider and to appeal the administrative decision.See Samuelian v. Town of Coventry,701 A.2d 814, 815 (R.I. 1997) (noting that even pro se litigant has responsibility to be familiar with law and rules of procedure). In fact, it appears that MRP was told during that telephone conversation to fax over its concerns, yet it still — for reasons unexplained — waited several more days before doing so. (Tr. at 14, DLT Reconsideration Hearing, 5/31/07.) SeeStevens v. Gulf Oil Corp.,108 R.I. 209, 211, 274 A.2d 163, 164 (1971) (denying 60(b)(1) motion when movant failed to explain neglect). In Pari v. Pari,558 A.2d 632 (R.I. 1989), the Court held that "[e]xcusable neglect that would qualify for relief from judgment is generally that course of conduct which a reasonably prudent person would take under similar circumstances." Id. at 635 (citing Clergy and LaityConcerned v. Chicago Bd. of Educ.,586 F.Supp. 1408, 1410 (N.D. Ill. 1984)).
Excusable neglect has been described by our Supreme Court as "[a] failure to take the proper steps at the proper time, not in consequence of the party's own carelessness, inattention, or willful disregard of the process of the court, but in consequence of some unexpected or unavoidable hindrance or accident, or reliance on the care and vigilance of his counsel or on promises made by the adverse party." Daniel v. Cross, 749 A.2d 6, 9 (R.I. 2000) (quotingBlack's Law Dictionary 566 (6th ed. 1990)). Our Supreme Court has recently confirmed that "excusable neglect must involve something more than a careless deviation from standard office procedure or the failure to remember a deadline." Boranian v.Richer, No. 2008-324-A., slip op. at 8 (R.I., filed Nov. 20, 2009). Here, MRP's failure to take the proper steps at the proper time was the result of MRP's own carelessness or inattention. The record is devoid of any reference *Page 17 
to unexpected or unavoidable hindrance or accident. It is likewise devoid of any evidence of promises made by DLT or anyone else that the timelines would be stayed or extended. SeePleasant Mgmt., LLC, 960 A.2d at 224-25 (excusing neglect because of reliance on statements from conversation which never should have occurred because of anti-contact rule). In fact, MRP does not even suggest that Gaulin relied on promises she received from DLT when she delayed filing a request to reopen or an appeal to this Court. MRP justifies its failure to comply with timelines by arguing that "without specific reference to any time frame, a reasonable standard must apply" to a reconsideration request under the Administrative Procedures Act. (Tr. at 9, DLT Reconsideration Hearing, 5/31/07.) Indeed, MRP successfully argued to the second hearing officer that its request for reconsideration "some thirty-five or thirty-six days" following the original decision was "certainly within reason." Id. The Court rejects this argument and notes that the original decision itself set forth the appeal period in bold type. (Decision at 6, Nov. 27, 2006.) Rule 60(b) refers to seeking relief from a final judgment, order, or proceeding, not from failing to file an appeal within the allotted time frame.[9] *Page 18 
 IV Subject Matter Jurisdiction
Rhode Island Courts lack subject matter jurisdiction over untimely appeals filed under the APA. See Considine v. Rhode IslandDOT, 564 A.2d 1343, 1344 (R.I. 1989) (declaring District Court did not possess statutory authority to entertain appeal filed after thirty days of agency decision). DLT mailed its only valid decision on November 27, 2006, and MRP filed this complaint on July 13, 2007. This time difference well exceeds the thirty day grant of this Court's jurisdiction. The appeal is therefore dismissed.
This Court is mindful of the express language of § 42-35-15, giving this Court jurisdiction if "[p]roceedings for review are instituted by filing a complaint . . . within thirty (30) days after mailing notice of the final decision of the agency or, if a rehearing is requested, within thirty (30) days after the decision thereon." This statute cannot, however, be read to disregard our rules of civil procedure, the necessary limitations on an agencies' inherent authority to reconsider its own decisions, and the explicit instructions at the end of the DLT decision notifying an aggrieved party it "may appeal this final decision to the Rhode Island Superior Court within thirty (30) days."See Carbone, 702 A.2d at 388-89 (noting rules of civil procedure construed to secure just, speedy, inexpensive outcome);Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co.,28 Ohio St. 3d 20, 28, 502 N.E.2d 590, 596 (1986) (recognizing limitations in inherent power to review previous decisions). A consideration of all these sources can lead to only one logical conclusion: an appellant must take some formal action within thirty days of the original decision. See Town of Hopkinton v. Keiser,122 R.I. 524, 528, 409 A.2d 1220, 1223 *Page 19 
(1980) (refusing to entertain appeal pursuant to Rule 60(b) after appeal deadline expired). The legislature did not intend to create a loophole to allow litigants to revive an appeal period that had already run by filing a tardy request for reargument. Giving aggrieved parties an unlimited time to appeal an administrative decision frustrates the purpose of a limited appeal period because it deprives prevailing parties of finality.See Griggs v. Estate of Griggs,845 A.2d 1006, 1009 (R.I. 2004) (per curiam) (observing in the context of probate appeals to Superior Court the statutory time limits are jurisdictional and cannot be extended by a "sympathetic trial justice"). Indeed, when our Supreme Court noted that agencies have the inherent authority to reconsider decisions, the case it relied upon recognized that the power to reconsider was subject to the time for appeal and other statutory limitations. SeeIn re Denisewich, 643 A.2d at 1197-98 (citing Hal ArtzLincoln-Mercury, Inc., which declared inherent authority of agency to review own decision subject to appeal time limit).
 V Conclusion
For the above reasons, this Court finds that the second hearing officer erred when he granted Appellant's request for reconsideration. In doing so, he denied Nobrega the finality and closure to which she was entitled. Accordingly, the appeal is dismissed for lack of jurisdiction. Counsel shall submit the appropriate order for entry.
[1] During the time between the sale and the actual closing, a loan officer would remain available to help with the loan in case the borrower had questions or the underwriter needed further assistance.
[2] A broker fee is a fee that is charged to the borrower and determined by the loan officer and cannot exceed the state guideline of five percent. (Tr. at 16, August 3, 2006.) The yield spread is a fee MRP charges to the lender. Id. at 18.
[3] The file does not indicate when Breton returned from vacation, or if Breton responded to Gaulin's inquiry upon her return.
[4] Department of Labor Rule 16 000 003-5 provides, in pertinent part: "[a]ll hearings, unless otherwise provided by law, shall be conducted in accordance with the applicable provisions of the Administrative Procedures Act and any amendment thereto." Section 42-35-2(a) of the APA provides: "in addition to all other rule making requirements imposed by law, each agency shall: (2) Adopt rules of practice, setting forth the nature and requirements of all formal and informal procedures available. . . ."
[5] The only purported change the Hearing Officer made to the November 27, 2006 decision was to reduce the amount owed to Nobrega in recognition of MRP paying Nobrega a commission on one loan after the original hearings but prior to the first decision. The first decision already included a statement that Nobrega's award was "minus any payments made to Petitioner post hearing," however, and thus the hearing officer did not change the decision at all. (Decision at 5, November 27, 2006.)
[6] Comparing Rule 60(a) and Rule 60(b), the First Circuit has cited International Controls Corp. v. Vesco,556 F.2d 665 (2nd Cir. 1977), cert. denied434 U.S. 1014 (1978), with approval. Scola v.Boat Frances R. Inc., 618 F.2d 147, 152 n. 8 (1st Cir. 1980) (recognizing concept implied in Rule 60(a) that Rule does not affect party's interest in taking an appeal). In International ControlsCorp., the Second Circuit stated:
 We believe the appellant's argument is based on a failure to appreciate the difference between Rule 60(a) and Rule 60(b)(1). While the latter's reference to "mistake" has been held to include mistakes by the district court, a motion for relief from such judicial mistakes under Rule 60(b)(1) may not be made after the time for appeal has elapsed, at least if the mistake alleged is of a substantive legal nature. If, on the other hand, the mistake alleged is of a "clerical" nature, "arising from oversight or omission," then a motion may be made only under Rule 60(a), which allows the court to correct such errors "at any time." Unlike the grant of a Rule 60(b) motion, however, the grant of a Rule 60(a) motion does not lead to relief from the underlying judgment, as is apparent upon comparison of the relevant language. The time for appeal from the underlying judgment correspondingly dates from the original rendition of the judgment in the Rule 60(a) context, whereas in the Rule 60(b) situation it dates from the entry of the amended judgment. International Controls Corp., 556 F.2d at 670 (citations ommited).
[7] This Court notes that although certain rules of civil procedure have been held to be relevant in the arbitration setting, our Supreme Court recently held that Rule 60(b) is not one of them. In Boranian v. Richer, No. 2008-324-A., slip op. at 5 (R.I., filed Nov. 20, 2009), the Supreme Court determined Rule 60(b) does not apply to arbitration awards because an arbitrator's award is not a final judgment or order as contemplated in Rule 60(b). Unlike the arbitration award, the original DLT decision of November 27, 2006 was a final order in accordance with § 42-35-12.
[8] Gaulin testified at the Reconsideration Hearing that during the telephone call with DLT, she was told, "[w]hy don't you fax everything over, so I have the information for the file, and I will have Ann Breton call you back." (Tr. at 14, DLT Reconsideration Hearing, 5/31/07.) Gaulin alleges this conversation occurred before the thirty day appeal period expired, yet the decision is clear that DLT did not receive a fax from Gaulin until after thirty days. (Amended Decision at 4, June, 13, 2007.) The only mention Gaulin may have received that suggested she may have an additional week to appeal the decision occurred after the time to appeal the decision had already expired. The DLT Amended Decision states: "[a] review of Ms. Breton's notes, which are contained in the hearing file indicates that she spoke to both parties, namely Ms. Nobrega and Ms. Gaulin, on December 27, 2006 to inform them that thirty days had passed since the decision had issued, that no checks or notice of appeal had been received and that Ms. Gaulin would have a week to either send the checks or appeal the decision." Id. Clearly, a conversation that occurred after the appeal deadline had already passed cannot be the alleged impetus for missing the appeal deadline.
[9] The Court notes that in civil cases, Article I, Rule 4(a), of the Supreme Court Rules of Appellate Procedure permits the trial court to extend the time for filing a notice of appeal to the Supreme Court not to exceed thirty days "[u]pon a showing of excusable neglect." See Samuelian,701 A.2d at 815 (citing Friedman v. Lee Pare Assocs.,593 A.2d 1354 (R.I. 1991) (recognizing standard query for granting appeal extension under Rule 4(a) is determination of excusable neglect)). Article I, Rule 1(a) specifically limits the scope of the appellate procedure rules to "appeals to the Supreme Court from the Superior Court and the Family Court, and in applications for writs or other relief which the Supreme Court is competent to give." This Court need not reach the issue of whether Rule 4(a) applies to administrative appeals to the Superior Court, however, because as set forth previously, MRP failed to demonstrate excusable neglect.